**FENZL et al. v. CITY OF HOUSTON.**

No. 9961.

Court of Civil Appeals of Texas. Galveston.

July 14, 1933.

Rehearing Denied Oct. 5, 1933.

On Motion for Additional Findings of Facts and Conclusions of Law Oct. 25, 1933.

730

Edgar H. Phelps, of Houston, for appellants.

R. R. Lewis, Geo. D. Neal, and Wm. M. Holland, all of Houston, for appellee.

GRAVES, Justice.

This appeal is from a judgment below perpetually enjoining appellants, at the suit of the City of Houston, from obstructing what was found to be a public street within the city's limits, the material substance thereof being as follows:

"Upon hearing the pleadings, evidence, and argument of counsel, and being fully advised, it appears unto the Court that the law and the facts are with the plaintiff, and that the defendants, and neither of them, have any right, title, or interest in and to Frio Street or Front Street East of and adjoining Lots Nos. Five (5), Six (6), Seven (7), Eight (8), Nine (9), and Ten (10), in Block Four (4) of the town of Harrisburg, as shown on the John R. Williams map of Harrisburg recorded in Volume 6, page 200½ of the Deed Records of Harris County, Texas, in the John R. Harris Survey, South side of Buffalo Bayou in the present limits of the City of Houston, Harris County, Texas.

"And it further appearing to the court that the defendants have obstructed the said public street by placing thereon certain machinery, fences, and other obstructions, and have failed and refused to remove the same on demand of the City of Houston, and are thereby impeding the improvement of this street and the waterfront on Buffalo Bayou which abuts on the street along the East side:

"It is ordered that Defendant's general demurrer is overruled to which action of the Court the Defendant in open court excepted.

"It is, therefore, ordered, adjudged and decreed by the court that the defendant, R. A. Fenzl, and the defendant, Harrisburg Machine Company, its officers, agents, servants, and employees, be and they are each and all hereby perpetually enjoined from interfering with the City of Houston in opening the said street and in removing the said machinery, fences, and other obstructions therefrom, or from occupying or using the said street hereinabove described in any other capacity than as members of the general public traveling on the said street, or as owners of property abutting on the said street."

Other than a demurrer and a denial, both general, accompanied by a further plea of "not guilty," the only defense declared upon by appellants was a claim to having been in such possession of the land involved for a period of ten years from and after 1920 as had matured a title to it in them against the city under the ten years' statute of limitation (R. S. art. 5510); even in this court they pursue that theory of the suit by in their brief denominating it as one "sounding in Trespass to Try Title, but praying for a Writ of Injunction rather than the statutory Writ of Possession."

█ After careful consideration of the record, it is the conclusion of this court that on both the facts and the law the cause is in ultimate effect practically a counterpart of that recently determined by this court under the style of Coombs v. City of Houston, the opinion in which is reported in 35 S.W.(2d) 1066; the judgment rendered herein, therefore, after a full and final hearing on the facts by the learned trial court, was the only one that could have been properly entered. Because of the very full citation of the authorities applicable to such an action in the Coombs Case, it is not deemed necessary to here either collate others or to rediscuss the principles of law there applied; in other words, since the city's application for this writ plainly stated a good cause of action for such relief under the principles laid down in the Coombs Case, the appellants' general demurrer thereto, which had the legal effect of admitting all those averments, was rightly overruled; there is accordingly nothing left to be inquired into, except the general claims of the appellants, that the finding of the trial court to the effect that the property constituted a dedicated public street at, before, and throughout appellants' attempted appropriation of the same was sufficiently supported by the evidence, and whether or not there were any reversible errors in the admission of testimony.

Neither, we think, can any of these latter presentments be sustained.

■■■ As concerns the issue of dedication, the proof seems adequate, if not indeed undisputed; there was in evidence a map known and identified as the John R. Williams map of Harrisburg, made in 1854, and shown to have been in general use for many years prior to the inception of appellants' claims, as the only map that had been so used for the sale of lots in that town, upon which map this property appeared during all that time as a public street, as claimed by the city and found by the court; further, while the map did not show upon its face that there had been an express dedication of the property for a street, there were aliunde shown to have transpired since the filing for record of that ancient document (such filing having occurred in 1854, as shown by the record thereof in volume 6, page 200½, of the Deed Records of Harris county) facts supplying this omission and constituting as effective a dedication as if such express declaration to that effect had appeared; for instance, that lots in the town of Harrisburg had been officially surveyed, as well as bought and sold, in reference to and reliance on this map, it having long been the only one in general use in making transfers of property there; that the town itself had been made a part of the city of Houston years before the institution of this suit; that two court decrees from district courts in Harris county judicially then recognizing this property to be a public thoroughfare had been rendered in the years of 1908 and 1912, respectively; and that it had been actually used by the public as such a street, not only in 1901, but also continuously during the period from 1905 to 1910.

A dedication was thus established, notwithstanding the lack of direct proof that this Williams map, in part relied upon, had been recorded by the original owners of the land thereon delineated; their successors having so dealt with it as to sustain if not compel the conclusion that originally it had been irrevocably set apart for public use. Pullman v. City of Houston, 59 Tex. Civ. App. 48, 125 S. W. 69; Gibbs v. Ashford, 27 Tex. Civ. App. 629, 66 S. W. 858; Watland v. City of Wichita Falls (Tex. Civ. App.) 286 S. W. 763; Coombs v. City of Houston, supra.

■ Appellants' objections to the admission of the certified photostatic copy of the Williams map, and to the witness Crotty's testimony that he had bought lots in the town of Harrisburg with reference to that map, were properly overruled.

Most of the facts about the map have already been stated; it may be added that the copy of it used was shown to be a duly certified photostatic and correct one that had been filed with the papers of the cause six days before this trial; that the original had been properly filed and recorded for more than the ten years required by the statute; that it correctly delineated the land "out of the lots and blocks and streets in the City of Harrisburg, which has subsequently been incorporated or annexed to the City of Houston." Enough was thus shown to admit the copy as the authentic map of the town. R. S. article 3726; City of Houston v. Finnigan (Tex. Civ. App. 1905, writ refused) 85 S. W. 470, 473; Spencer v. Levy (Tex. Civ. App., Austin 1915, writ refused) 173 S. W. 550, 556.

■ The title to the lots the witness Crotty testified he had bought in reliance upon and through reference to the Williams map was in nowise here involved, being a wholly collateral matter; the only thing material being whether or not buying and selling of property delineated thereon had taken place by the use of the map as a correct representation of its whereabouts and position; this constituted an exception to the best evidence rule, and the statement was admissible. Larrabee v. Porter (Tex. Civ. App., Austin 1914, writ refused) 166 S. W. 395, 405; Texas Jurisprudence, vol. 17, page 489.

Upon the whole cause, under the holding of this court in the Coombs Case, as especially emphasized on rehearing, which is here again stated to be the law, the sole affirmative defense of the appellants in this instance, their claim to title from ten years' possession, as against the right of the public authority, acting through the appellee city, to open and keep unobstructed for public use a pre-existing street that had already been both set apart and in fact used for that purpose, got them nowhere at all.

Further discussion becomes unnecessary, since these conclusions determine the merits of the appeal. The judgment will therefore be affirmed.

Affirmed.

### On Motion for Additional Findings of Fact and Conclusions of Law.

While this court has not deemed additional findings of fact necessary over those briefly recited in the original opinion, in deference to the earnest request of able counsel for appellants, these specific statements are appended:

The record neither expressly nor affirmatively discloses transfers of any sort affecting this property either out of the state of Texas, or out of John A. Williams or those holding under him; however, the map in evidence was shown to be a certified photostatic copy of the John A. Williams map of 1854, which was formerly fully described; the map shows that Frio street or Front street extends the full length of the east side of block 4, between that block and Buffalo bayou. Captain

732

Chas. Crotty testified that he had bought six lots in block No. 5 in Harrisburg for the Navigation district with reference to the John A. Williams map, that this map was the only map in general use for the transfers of property in Harrisburg; A. J. Keeting testified that he had made surveys from time to time of the lots and blocks in Harrisburg, and that the John A. Williams map dated April 1, 1854, was the generally used and recognized map of Harrisburg and of the property situated therein.

Captain Crotty further testified that Frio or Front street had no obstructions upon it in 1905, and that it was generally recognized as a street then.

J. W. Matthews testified that in 1901 Front or Frio street was unobstructed to the east of block 4, and that it was generally considered as a public street at that time, he himself having used such street in his business and seen others use same as a public thoroughfare.

Gus. Fenzl, brother to one of the appellants herein, testified that he ran the Harrisburg Machine Company up to 1927; that he had first put up his machine shop right next to where the machine company is located now in the same block, and understood when he leased same from one Collins that there was a street between the property he leased and the bayou; that this company was known as the Harrisburg Machine Works, was incorporated in 1921 or 1922 as the Harrisburg Machine Company, and that he was president of same for three or four years after it was incorporated; further, that he made no claim for his company or for himself to such street.

There were in evidence also two decrees as follows: One entered in the case of John Farmer vs. W. C. Coghlan, rendered by the Fifty-Fifth district court in May, 1908, which referred to this John A. Williams map, recognized that Front street described therein was a public thoroughfare, and ordered the defendant, W. C. Coghlan, to remove certain obstructions therefrom, perpetually enjoining him from erecting any others; the other, entered by the eleventh district court in the case of J. Buckner vs. M. Freeman, on November 9, 1912, which recognized the Williams map of Harrisburg by reference thereto, and perpetually enjoined Freeman from closing up or fencing any part of Front street between the east line of block 4 and Buffalo bayou.

On this state of the record, we have been constrained to adhere to the holding first made, that the property was shown to have become a public street and was used and recognized as such long before the inception of any possessory right that might otherwise have arisen in appellants by reason of their claimed occupation and use thereof.