### QUANAH ACME & P. RY. CO. v. SWEARINGEN.    (No. 2871.)*

Court of Civil Appeals of Texas. Amarillo. Oct. 12, 1927.

Rehearing Denied Nov. 9, 1927.

1. **Municipal corporations** ⬦697(1)—**Owner of lots abutting on alley dedicated to public use held entitled to mandatory injunction to restrain maintenance of railroad's loading platform obstructing alley, damages at law being inadequate (Pen. Code 1925, art. 784).**

Owner of lots abutting on alley dedicated to public use, specially injured by construction and maintenance of loading platform which obstructed alley, *held* entitled to mandatory injunction to restrain railroad from maintaining loading platform built in violation of Pen. Code 1925, art. 784 and without city's consent, since under such circumstances relief by way of action at law for damages would be inadequate.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused.

**2. Municipal corporations ⬦692—City had right to refuse consent to railroad to maintain loading platform across alley dedicated to public (Rev. St. 1925, art. 6344).**

Where alley was dedicated to public use, city had unqualified right to refuse its consent to railroad to close end of alley for loading platform for railroad, notwithstanding railroad's right to maintain necessary structures for handling freight, under Rev. St. 1925, art. 6344.

**3. Eminent domain ⬦47(1)—Railroad could not condemn easement in alley dedicated to public use, for loading platform, where other locations were equally convenient for public (Rev. St. 1925, art. 6344).**

Where railroad could locate loading platform at another place with equal convenience to the public, railroad was not, under Rev. St. 1925, art. 6344, authorized to condemn property owner's easement in alley dedicated to public use, for erection of such platform, merely because its location there would save expense and add to convenience of railroad.

**4. Highways ⬦80—Municipal corporations ⬦663(1)—Abutting property owner owns fee in street or alley or highway to center thereof unless grant otherwise declares.**

Owner of property abutting on street, alley, or public highway owns fee to the center of the street, alley, or public highway unless otherwise declared in grant.

Appeal from District Court, Hardeman County; Robert Cole, Judge.

Suit by D. D. Swearingen against the Quanah Acme & Pacific Railway Company, in which defendant asserted a cross-action. From a judgment in plaintiff's favor on both the original and cross-action, defendant appeals. Affirmed.

Hamilton & McMath, of Matador, for appellant.

C. Y. Welch, of Quanah, and B. Y. Cummings, of Wichita Falls, for appellee.

JACKSON, J. This suit was instituted by appellee, D. D. Swearingen, in the district court of Hardeman county, Tex., against the appellant, the Quanah Acme & Pacific Railway Company, to secure a mandatory injunction, requiring appellant to remove a platform which it had constructed across the alley running through block No. 11, in the city of Quanah.

Appellee pleads that he is, and was at all of the times alleged, the owner of lots Nos. 4, 5, 6, 7, and 8 in block No. 11 of the original townsite of Quanah, Tex., and that appellant is and was the owner of lots Nos. 2 and 3 in said block, which lots lie lengthwise along front street, and are separated by the alley in said block; that said block is bounded on the east by Green street, on the west by Du Bose street, on the north by Front street, and on the south by Clark street;

that in the platting of the original townsite of Quanah, said alley was left in said block, running from north to south, and opens into Front street on the north, and into Clark street on the south, and that appellee's lots abut upon the east side of said alley; that on each of appellee's lots there is a residence, one of which is occupied by himself, as his home, and each of the others by tenants; that he has an interest in said alley and is entitled to the free and unobstructed passage therein, superior to the rest of the citizenship of the city of Quanah; that said alley has been used by him and those occupying his property at all times since the platting of the town, which is of great convenience to the use and enjoyment of his said property in affording a rear entrance thereto and allowing the passage of vehicles therein and on and into said premises; that for a great number of years appellant had maintained its depot one block east of the north line of block No. 11, near which depot it maintained its platform, for the purpose of loading and unloading its freight cars, and while its platform was so located it did not interfere with the rights of appellee; that on October 1, 1926, appellant abandoned the maintenance of its platform located near its depot, and built the new platform on lots 2 and 3 and extending across the alley running through said block, which completely obstructs passage through the alley; that immediately west of block 11, the appellant owned other property adjacent to its railway tracks, upon which said new platform could have been located and constructed, and that so located, it would not have inconvenienced or interfered with any property owner; and that such new platform was erected and constructed across said alley without the permission of the city council of the city of Quanah, and in defiance of the city ordinances of said city, and against the orders and instructions of the city council thereof.

The defendant answered by demurrers, general denial, and pleaded specially that it was granted a franchise by the city of Quanah to place its tracks upon the middle 30 feet zone of Front street, and that it had built and operated its tracks thereon and by reason of the increase in its business, and to enable it to serve the public expeditiously, it became necessary that it enlarge and extend its platform facilities for the purpose of loading, reloading, unloading, and transferring freight from one car to another; that to serve the public it was necessary to erect and construct the platform complained of; that there was no other place to erect such platform; that it had acquired the property across the north end of block 11 and blocks 28 and 53, in the city of Quanah, lying west of block 11, years ago, for the purpose of enlarging its facilities when its business should demand it. It denied that it built the tracks

and platform maliciously or capriciously, and alleged that it applied to and secured permission from the city to construct such tracks and platform, on the condition that it did not obstruct traffic through the alleys in said blocks; that said platform was 8 feet wide and 200 feet long, and across the north end of the alley in block No. 11; that the end of said alley was virtually a cul-de-sac, ending at Front street occupied by appellant's railroad tracks, and that there was no road or alley extending north from Front street, as the property immediately north thereof is occupied by the Fort Worth & Denver reservation, with no streets and alleys across it.

Appellant also, by way of cross-action, alleged that it was a common carrier, duly incorporated under the laws of the state and owned and operated a railroad through Hardeman and other counties and into the city of Quanah; that it has heretofore constructed its industrial tracks and a transfer platform along the north side of blocks 11, 28, and 53 in the city of Quanah, which tracks and platform was located upon its own property, except that part of the alley running through block No. 11, which it crosses; that as such common carrier it has the right of eminent domain, and requests that upon a trial of the cause that all property rights and interests of appellee be condemned for appellant's use, and that proper judgment be rendered, fixing appellee's damages therefor.

A trial was had on the merits of the case before the court, without the intervention of a jury, and judgment rendered granting appellee a permanent mandatory writ of injunction, commanding appellant to remove its new platform from across the alley in controversy, and refusing appellant's right of condemnation under its cross-action, from which judgment this appeal is prosecuted.

On June 23, 1926, the appellant made application to the city council of the city of Quanah to lay certain railway tracks and construct its new platform across the alley in controversy. "The city council, having duly considered such application, and being fully advised in the premises," granted the application upon the special condition and stipulation that neither the tracks nor the platform should be built in such a way as to close the alley, but that it should be left unobstructed and so maintained as to allow the use of the alley for traffic. The record tends to show that this alley was dedicated on the original plat of the townsite of Quanah, and that for 21 years appellee has owned lots 4, 5, 6, 7, and 8, in said block 11, according to said original plat, and that said lots abut on the alley in question; that the platform as constructed across said alley is 8 feet wide, and over 5 feet high, and completely obstructed the entrance of the alley into Front street; that appellee's residence which he occupies is situated upon one of his said lots, and his other residences upon said lots are occupied by his tenants; that the platform materially interferes with the use and enjoyment of his property; and that the city council had ordered the appellant to remove the platform from the alley, which order was ignored. There is considerable testimony disclosing how freight is loaded and unloaded upon and from appellant's platform, the use and occupancy of the space on either side of the platform by trucks hauling freight to and from the platform, the conduct of the employees of appellant, the noise made, and the profane language used by them, and the proximity of the nearest tenant house to said platform; but we deem it unnecessary to state this part of the testimony in detail.

The testimony tends to show that the increase of the business of the appellant necessitated greater platform capacity than it had, prior to the construction of the new platform across the alley in controversy, which was erected for the purpose of facilitating the handling of its business. Mr. J. F. Sommer, the vice president of appellant, testified substantially that he knew at the time the platform was erected that it was done in violation of law, and that he had been notified to take it down, but that he thought the platform was more of a public necessity than the alley; that appellant owned six lots in block 153, and has a tract cornering on said lots as a turnout; that it could build a platform 600 feet long on block 153 without crossing a street or alley, but the lots in block 53 were more than 600 feet further from the depot than the new platform as located, and appellant could not get to a platform on said block without buying additional property; that the platform as located across the alley in controversy was much nearer to the depot and much more convenient for the transaction of business than a platform would be erected on the lots in block 153.

[1] The appellant assigned as error the action of the trial court in rendering judgment against it, for the reason that appellee had an adequate remedy at law in his recourse for damages for whatever injuries he may have suffered on account in closing the end of the alley.

It is undisputed that appellee was the owner of the lots abutting on the alley, that the alley had been dedicated to public use, and that he had an interest in the alley not common to the general public and was specially injured by the construction and maintenance of the platform.

Appellant constructed its platform across the alley in block No. 11 in violation of Penal Code 1925, art. 784, and its conduct was willful because the platform was built without the consent of the city, and with the knowledge that the law was being violated.

"In addition to the right of the public to maintain a suit in equtiy for an injunction, private citizens who are specially injured by an obstruction and interested in preventing its continuance may, upon a proper showing, maintain a suit in equity for an injunction," and "if the nuisance is a continuing one, invading substantial rights of the complainant in such a manner that he would thereby lose such rights entirely but for the assistance of a court of equity, he will be entitled to an injunction, upon a proper showing, notwithstanding the fact that he might recover some damages in an action at law." 2 Elliott, "Roads and Streets," pp. 1108, 1109.

"Any unauthorized obstruction which unnecessarily impedes or incommodes the lawful use of a highway is a public nuisance, at common law." * * *

"So, it is a nuisance to erect a gate or a fence across a highway, to construct a building thereon, or to cut a ditch or millrace across it without bridging the same or otherwise restoring the way to its former safe and convenient condition so as not to impede or endanger travel." 2 Elliott, "Roads and Streets," p. 827.

"The obstruction of a public highway is a nuisance, and the right of a private party to restrain such nuisance is dependent upon sustaining some special injury different in kind from that sustained by the public." Santa Fé Townsite Co. et al. v. Norvell (Tex. Civ. App.) 207 S. W. 960.

"A way over land set apart for public travel in a town or city is a street, no matter what it may be called. It is the purpose for which it is laid out and the use made of it that determines its character. 'Street' is a general term, and includes all urban ways which can be and are generally used for the ordinary purposes of travel. A narrow way, less in size than a street, is generally called an 'alley'; and, if the alley is a public one, it is a highway, and, in general, is governed by the rules applicable to streets. * * * An abutting owner has rights not shared by the public at large, special and peculiar to himself, which arise out of the very relation of his lot to the street in front or alley in the rear of it. These rights are property, and as such are as sacred from legislative invasion as his right to the lot itself. * * * And it is well settled that equity will grant relief to a party entitled to a right of way over a street, and protect him in the enjoyment thereof, by restraining the erection of obstructions thereon. Id., § 661. The owner of land abutting upon a street or alley, one end of which is obstructed so that he cannot have egress from his property to other streets in that direction, suffers an injury peculiar to himself by reason of the public nuisance (Bannon v. Murphy [Ky.] 38 S. W. 890 [18 Ky. Law Rep. 889]), and is entitled to such relief." Kalteyer v. Sullivan et al., 18 Tex. Civ. App. 488, 493, 46 S. W. 290, 291; also, Bone v. Clark (Tex. Civ. App.) 214 S. W. 607.

While it is the duty of a city to vacate a nuisance, such as closing a public street, "the citizen who suffers a special injury is not left without remedy in case the city fails to respond to its duty, nor is he remitted to his action for damages alone, although the injury suffered by him may be compensated in damages." Ort et al. v. Bowden et al. (Tex. Civ. App.) 148 S. W. 1145.

Under the facts disclosed by this record, in our opinion, these authorities are decisive against appellant's contention, and this assignment is overruled.

Appellant assigns as error the action of the trial court in refusing to grant it the relief asked in its cross-bill, in which it sought to condemn the rights and interests of appellee in the easement enjoyed by him in the alley, because the testimony showed that appellant was a common carrier, and that it was essential that it use and occupy such alley for the maintenance of its platform.

Article 6344, R. C. S. 1925, authorizes railway corporations to erect and maintain all necessary and convenient buildings, stations, fixtures, and machinery for the accommodation of its passengers and the handling of freight in the operation of its road.

"Since in the nature of things, a general law for the incorporation of railroad companies could not point out the particular spots upon which the shops were to be located, it follows that they must have authority to choose the locations. But it does not follow that it was the intention of the Legislature to empower them to make the selection arbitrarily; that is to say, without reference to the rights of persons who might own property in close proximity to such locations. Did the Legislature intend to authorize a railroad running in the city of Austin to establish and operate structures of the character in question, so near to the Capitol as to render it unfit for the purposes for which it was constructed? The same question may be asked as to the courthouse of the county or the public school buildings and churches of the city. We should be loath to answer this question in the affirmative. Yet if the statute empowers a railroad company to establish its shops in such proximity to a private dwelling as to depreciate its value and to bring great discomfort upon the occupants, no sufficient reason suggests itself to our minds why the same might not be done as to the Capitol, the courthouse, and other public structures." Rainey v. Red River, T. & S. R. Co., 99 Tex. 303, 89 S. W. 772, 13 Ann. Cas. 580, 122 Am. St. Rep. 622, 3 L. R. A. (N. S.) 590.

[2] The city of Quanah, in refusing to give its consent to the appellant to close the end of the alley through block No. 11, opening into Front street, acted within its unqualified right. Kansas City, M. & O. Ry. Co. of Texas v. City of Sweetwater, 104 Tex. 329, 137 S. W. 1117.

[3] This alley had been dedicated to public use. In Sabine E. T. R. Co. v. Gulf & I. Ry. Co. of Texas, 92 Tex. 162, 46 S. W. 784, in answer to a certified question from the Court of Civil Appeals for the First Supreme Judicial District, as to the right of one railway company to condemn for its use the property of another railway company, the Supreme Court says:

"To the second question we reply that, under the facts found by the Court of Civil Appeals, the law does not authorize the condemnation of property which has already been dedicated to a public use, when such condemnation would

practically destroy the use to which it has been devoted. No express authority is given by our statutes to condemn such property, and the authority cannot be implied from the general power conferred by the law unless the necessity be so great as to make the new enterprise of paramount importance to the public, and it cannot be practically accomplished in any other way. * * * The first occupier of the ground is entitled to all the advantages derived from the establishment of the public use therein, and no question of convenience nor expense to the company seeking condemnation can be considered unless it be such as to render the performance of the duty enjoined by law practically impossible by any other means which can be used by the constructing company."

The testimony in the record discloses that the location of the platform across the alley in controversy was not of paramount importance to the public, and it is uncontroverted that the platform could have been located at another place. Appellant owned lots west of block No. 11, on which it could have erected its platform for loading and unloading its freight, which the testimony tends to show would have served the public as expeditiously and efficiently as the platform in controversy, and the question of expense and convenience to the appellant would not authorize it to maintain its condemnation proceedings.

[4] It is apparently settled in this state that an owner of property that abuts on a street, alley, or public highway, owns the fee to the center of such street, alley, or public highway, unless otherwise declared in the grant. Roaring Springs Townsite Co. v. Paducah Telephone Co. (Tex. Civ. App.) 164 S. W. 51, and authorities cited.

Finding no error in the record, the judgment is affirmed.