**WILLIAMSON POINTE VENTURE; John K. Condon, Trustee; and John K. Condon as Trustee of the Sean and Candice Condon Family Trust and of the Tiffany, Chase, and Hunter Coleman Family Trust, Appellants,**

v.

**CITY OF AUSTIN, Appellee.**

No. 03–95–00038–CV.

Court of Appeals of Texas, Austin.

Nov. 22, 1995.

Rehearing Overruled Jan. 10, 1996.

John J. McKetta, III, Graves, Dougherty, Hearon & Moody, Austin, for appellants.

William T. Deane, Assistant City Attorney, Austin, for appellee.

Before POWERS, ABOUSSIE and KIDD, JJ.

PER CURIAM.

Appellants Williamson Pointe Venture; John K. Condon, Trustee; and John K. Condon, Trustee of the Sean and Candice Condon Family Trust and of the Tiffany, Chase, and Hunter Coleman Family Trust challenge a trial court judgment in favor of appellee City of Austin. At issue is whether rezoning is a "permit" that entitles the property owner who later develops his or her property to comply only with the standards existing at the time of rezoning. *See* Tex.Gov't Code Ann. § 481.143(a) (West 1990). The trial court held that it was not. We will affirm the trial court's judgment.

## FACTS

The disputed land lies in the Williamson Creek watershed in south Austin. Upon annexation, the City zoned the land as development reserve ("DR"), which allowed only the development of single family homes, farms, and ranches. The former owner of the land subsequently applied for rezoning in 1986. The Austin City Council approved the rezoning on March 26, 1987 by passing City Ordinance 870326–A. The new zoning categories included multifamily ("MF–1" and "MF–2") and warehouse/light office ("W/L") uses. The property owner filed, and received approval of, a preliminary subdivision plan on January 17, 1985. However, the owner did not file for final plat approval. The subdivision plan expired on September 2, 1987, because no additional steps were taken and no application for extension was filed.

When the present owner, Williamson Pointe Venture ("the Venture"), acquired the property on March 30, 1992, the Austin Save Our Springs ("SOS") referendum was pending. The Venture planned to acquire the land and submit applications for development permits before the more environmentally-stringent requirements of the SOS ordinance were passed so as to "grandfather in" earlier regulations.

The Venture filed a site plan application on August 6, 1992, but did not file a subdivision application to replace the expired one. The site plan was designed to comply with the Williamson Creek Ordinance, which was in effect at the time of rezoning. Austin City Ordinance No. 801218–W. However, the law in effect on August 6, 1992, at the time the site plan was submitted, was the Composite Ordinance. Austin City Ordinance No. 911017–B. The SOS Ordinance was approved by voters on August 8, 1992. *See* Austin City Ordinance No. 920903–D. The site plan was never approved and expired on August 2, 1993.[1]

By time of trial, the Venture had not filed a subdivision application to replace the one which had expired.

## APPLICABLE LAW AND CONCEPTS

The parties assert that subchapter I of Texas Local Government Code chapter 481, as amended effective September 1, 1989, applies to this controversy. We agree. Subchapter I was again amended on May 24, 1995 and the changes were expressly made retroactive to September 1, 1987, the effective date of the original act. However, the 1995 legislation excepted rights acquired under final judgments or involved in pending actions.[2] *See* Act of May 24, 1995, 74th Leg.,

---

1. The parties dispute why the site plan filed before the effective date of the SOS Ordinance was allowed to expire. Condon claims that the City told him that the *site plan* would have to comply with the SOS Ordinance; the City claims that it told him only that the *subdivision plan* that it had failed to file before August 8, 1992, would have to comply with the SOS Ordinance. It makes no difference for the purposes of our analysis, since, indisputably, both the 1985 preliminary plat and the 1992 site plan expired.

2. S.B. No. 1704 provides that:

R.S., ch. 794, 1995 Tex.Sess.Law.Serv. 4147, 4148 (West). We will consider the issue under the law in effect before the 1995 amendments because this action was pending on the effective date of the amendments.

Three land-use concepts involved in this dispute are zoning, subdivision, and site plans. Zoning is the broadest planning tool, the object of which is to ensure that proposed uses conform to the City's Comprehensive Plan. Tex.Loc.Gov't Code Ann. § 211.004 (West Supp.1995). The property owner who desires to rezone his or her property submits an application to the Planning Commission. The Planning Commission drafts a preliminary report, holds a public hearing on the proposed change, and makes a recommendation to the City Council. Tex. Loc.Gov't Code Ann. § 211.007(b) (West 1988). The zoning process results in the passage of an ordinance amending the City's zoning map to show the approved zoning category. The zoning categories describe in broad terms the uses to which a particular piece of property may be put and usually set a maximum number of units per acre.

Subdivision, a more detailed review of the proposed development, involves the platting of property into lots. See Tex.Loc.Gov't Code Ann. § 212.004(a) (West Supp.1995). The subdivision applicant must demonstrate compliance with drainage, transportation, and utility service requirements. The result of an approved subdivision application is a filed plat. Tex.Loc.Gov't Code Ann. § 212.004(d) (West Supp.1995). If the final plat includes four or more lots, the authority that approves the preliminary plan and the final plat is the Planning Commission.

A site plan is a specific proposal for the development of the property. The site plan applicant must demonstrate compliance with applicable siting rules, which includes such things as setback requirements, observation of flood plain boundaries and dedicated parkland, minimum lot size and width, maximum dwellings per lot and maximum height, maximum building coverage, and maximum impervious cover. In Austin, site plan review also addresses a myriad of small details, such as parking, landscaping, and tree preservation. See Austin Land Dev.Code §§ 13–2–600—13–2–700. The site plan is approved by the Planning Commission. An approved and released site plan is a prerequisite to building on the property. Austin Land Dev.Code § 13–1–600.

## ANALYSIS OF APPLICABLE CODE

■ Appellants, by one point of error, argue that the trial court erred by concluding that a rezoning of property is not a "permit" under section 481.143. We hold that the trial court did not err because the ordinance change that results from the rezoning process is not a "permit" to which the statute applies.

Section 481.143(a) provides in pertinent part:

The approval, disapproval, or conditional approval of an application for a permit shall be considered by each regulatory agency solely on the basis of any orders, regulations, ordinances, or requirements in effect at the time the original application for the permit is filed. *If a series of permits is required for a project, the orders, regulations, ordinances, or requirements in effect at the time the original application for the first permit in that series is filed shall be the sole basis for consideration of all subsequent permits required for the completion of the project.*

This subchapter shall apply to all projects in progress on or commenced after the effective date of this subchapter as originally enacted by Section 1, Chapter 374, Acts of the 70th Legislature, Regular Session, 1987, and the duly adopted requirements in effect at the time the original application for the first permit for the project was filed shall control. This subchapter shall be enforceable solely through declaratory, mandamus, or injunctive relief.

Act of May 24, 1995, 74th Leg., R.S., ch. 794, § 1, 1995 Tex.Sess.Law.Serv. 4147, 4147 (West).

However, section 3 of the bill further provides: Nothing in this Act shall be construed to diminish or impair the rights or remedies of any person or entity under a final judgment rendered by, or in any pending litigation brought in, any court concerning an interpretation of the provisions of Subchapter I, Chapter 481, Government Code.

*Id.*, § 3.

Tex.Gov't Code Ann. § 481.143(a) (West 1990) (emphasis added). The operative terms in section 481.143(a) are "permit," "regulatory agency," and "project." The second sentence of section 481.143(a) controls the disposition of this case.

■ Zoning and rezoning are legislative acts. *City of Pharr v. Tippitt*, 616 S.W.2d 173, 175 (Tex.1981). A permit is defined as a "license, certificate, approval, registration, consent, permit, or other form of authorization required by law, rule, regulation, or ordinance that must be obtained by a person in order to perform an act or initiate a project for which the permit is sought." Tex. Gov't Code Ann. § 481.142(2) (West 1990). Appellants urge us to interpret the terms "approval" or "other form of authorization" to include the legislative act of rezoning; we decline to do so.

■ Established law provides that no property owner has a vested interest in particular zoning categories. *See City of Pharr*, 616 S.W.2d at 176 (city can amend zoning ordinance as public necessity demands); *City of University Park v. Benners*, 485 S.W.2d 773, 778 (Tex.1972), *appeal dismissed*, 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191 (1973) (city could eliminate existing use); *Connor v. City of University Park*, 142 S.W.2d 706, 709 (Tex.Civ.App.—Dallas 1940, writ ref'd) (city could rezone property while application was pending). Otherwise, "a lawful exercise of the police power by the governing body of the city would be precluded." *Benners*, 485 S.W.2d at 778. Because the City could rezone the property to entirely prohibit previously permissible uses, even established uses, the City can amend regulations that affect the prospective development of the property within the broad zoning categories. The proposition that the legislative act of zoning entitles the landowner to develop his or her property free from all subsequent regulatory changes is so contrary to established law that the legislature, had it wanted to effect such a change, must have clearly so stated. *State v. Standard*, 414

S.W.2d 148, 153 (Tex.1967) (legislative grants of property rights must be strictly construed in favor of state on grounds of public policy).

Appellants rely on the City's order of processing ordinance, number 13–1–36, to support their argument that the rezoning is a permit. Ordinance 13–1–36 provides:

Applications for a project are processed in the following order, although all projects may not require all steps:

(1) Zoning;

(2) Subdivision;

(3) Site plan; and

(4) Building permit.

Applications for each step may be filed and will be processed concurrently at the request of the applicant, but each application will be approved in the order listed.

. . . . .

Rezoning is a step that must be taken before a preliminary plan or subdivision plat can be filed; so is purchasing the property. The mere fact that the City has provided that it will process an application for subdivision only after the property is properly zoned does not make zoning a "permit" for purposes of section 481.143.

■ Even if the definition of "permit" is read in isolation to include a zoning ordinance, a zoning change approved by the City Council cannot be the first permit in a series of permits comprising a project because the City Council, while engaged in zoning, is not a "regulatory agency" to which this version of section 481.183 applies. A regulatory agency is defined as an "agency, bureau, department, division or commission of the state or *any department or other agency of a political subdivision that processes and issues permits*." Tex.Gov't Code § 481.142(3) (West 1990) (emphasis added). On its face, the definition does not include the governing body of a municipality.

■ Appellants assert that a city council is an "agency." [3] The term "agency" is not

---

**3.** Appellants cite three cases that refer to a city council as an agency: *Burch v. City of San Antonio*, 518 S.W.2d 540, 542–543 (Tex.1975); *Williams v. City of Fort Worth*, 782 S.W.2d 290,

292 (Tex.App.—Fort Worth 1989, writ denied); *Coe v. City of Dallas*, 266 S.W.2d 181, 182 (Tex. Civ.App.—El Paso 1953, no writ). The casual references are irrelevant here because whether

defined. Courts apply the ordinary meaning of undefined statutory terms when interpreting a statute. *State v. Public Util. Comm'n,* 883 S.W.2d 190, 200 (Tex.1994). The word "agency" ordinarily refers to an administrative agency in the executive branch of the government. *See, e.g., Webster's Third New International Dictionary* 40 (Philip B. Gove ed., 1986) (agency is "a department or other administrative unit of a government"). The definition does not include the governing body of a municipality engaged in legislative acts. Also, we must construe the provision in its context. *Jessen Assocs., Inc. v. Bullock,* 531 S.W.2d 593, 601 (Tex.1975). Subchapter I is part of Title 4 of the Texas Government Code, which governs the executive, rather than the legislative, branch of government.[4] Because the legislature did not explicitly include in its definition of a "regulatory agency" the governing body of a municipality acting in its legislative capacity, and nothing in the statute's context indicates that was intended, we decline to read in the term.[5]

It is reasonable for the legislature to exclude zoning from the definition of a "permit" or a "project" because zoning is perpetual. Once established, it does not change until the City or the property owner take positive steps to change it. Sometimes zoning changes are accomplished but development

does not occur for many years. If zoning established a date of entitlement for compliance with regulations, the legislature would have created pockets of land which are immune from future regulatory protection. In this case, zoning was applied for in 1985; by 1995, ten years later, no ground had been broken, but three ordinances affecting development in the Williamson Creek watershed were passed: the Comprehensive Watershed Ordinance, the "Composite" Ordinance, and the SOS Ordinance.

Nor does the result seem unfair. In 1985, the land was rezoned as MF–1, MF–2, and W/L. The former landowner then had the right to submit a preliminary plan for subdivision and a site plan, subject to regulations in effect at the time. The zoning categories have not changed: the property is still zoned MF–1, MF–2, and W/L. However, because the landowner did not develop the property at the time of rezoning, the density of the expected development has been affected by the ordinance changing site plan requirements.

Appellants argue that it is unfair for the City to require them to comply with more restrictive siting requirements because lack of access to the property effectively prevented their predecessor-in-interest from developing the property ten years ago. Further, they argue that the former owner acquired

---

the city council was a "agency," much less an "agency ... that processes and issues permits" under section 481.183, was not an issue in any of the cited cases.

4. In contrast, a municipality's zoning authority is regulated by Chapter 211 of the Texas Local Government Code. *See* Tex.Loc.Gov't Code §§ 211.001.–013 (West 1988 & Supp.1995).

5. Appellants contend that City Council-approved zoning can be the first permit in a series of permits required for a project even if the City Council is not a regulatory agency to which section 481.143 applies. They argue that it is irrelevant that the City Council is not a regulatory agency because the second sentence of section 481.143(a) affects only how the *planning commission* must address *subsequent* applications such as an application for approval of a subdivision plat or site plan. We disagree.

The first sentence of section 481.143(a) provides that the "approval ... of an application for a permit shall be considered by each *regulatory agency*" solely on the basis of requirements in

effect at the time the application is filed, indicating that a "permit" to which the statute applies is a permit approved by a *regulatory agency.* The second sentence of section 481.143(a) applies only to a "series of permits" that comprise a "project." A project is defined as an "endeavor over which a *regulatory agency* exercises its jurisdiction and for which a permit is required before initiation of the endeavor." Tex.Gov't Code Ann. § 481.142(3) (West 1990) (emphasis added). Further, section 481.141(b), which sets out the legislative findings and intent, states that the "legislature desires to establish requirements relating to the processing and issuance of permits and approvals by governmental *regulatory agencies.*" Tex.Gov't Code Ann. § 481.141(b) (West 1990) (emphasis added). Clearly, the entire subchapter is devoted to the processing of permits issued by governmental regulatory agencies and each permit in the series of permits comprising a project must be a permit to which the subchapter applies. City Council-approved zoning cannot be the first permit in a series of permits comprising a project because a city council engaged in zoning is not a "regulatory agency."

some sort of vested interest because it added restrictive covenants to the property during the rezoning process. The developer who had the property rezoned in 1985 received, in exchange for its concessions, much more development-intensive zoning designations than it previously had and the ability to apply for preliminary plan and site plan approval, to which the ordinances then in effect would apply.[6] Although it took the initial step of submitting a preliminary plan, the former developer did not preserve its rights by proceeding. The parties dispute whether it could have kept its preliminary plan "alive" while it sought final plat approval since the streets could not be dedicated. Even assuming that the developer was completely faultless in allowing the preliminary plan to lapse, it appears that the development process was simply initiated too early to be practicable. In sum, appellants ask us to protect their predecessor's speculation about the future development of the property. This we cannot do.

Finally, appellants argue that the 1995 amendments to subchapter I indicate that rezoning is a permit and therefore, that a site plan application submitted at any time in the future is evaluated by the rules in effect in 1985, when the rezoning occurred. We disagree.

 One legislature's interpretation of a prior legislature's enactment may be persuasive but does not control the interpretation of the prior act. *State Highway Dep't v. Gorham*, 139 Tex. 361, 162 S.W.2d 934, 937 (1942); *Calvert v. General Asphalt Co.*, 409 S.W.2d 935, 937 (Tex.Civ.App.—Austin 1966, no writ). And, if the later legislation differs significantly from existing law, the later legislation changes rather than clarifies existing law. *See Tijerina v. City of Tyler*, 846 S.W.2d 825, 828 (Tex.1992). In this case, the 1995 legislation appears to be a broad change rather than a clarification: it changes the definition of "regulatory agency" to specifically include governing bodies of cities *when issuing a permit*, redefines "project" and adds a whole section of exclusions to the arguably broader statute. We cannot consider such changes in our evaluation of the pre-1995 version of section 481.143. *Id.*[7]

## CONCLUSION

We overrule appellants' point of error and affirm the trial-court judgment.

---

6. The original DR category allowed the property to be developed for single family homes, farms, or ranches, and required a minimum of 10–acre lots. The new MF–1 and MF–2 categories allowed 17 and 23 units per acre, respectively, with a minimum of 8,000 square foot lots, and the W/L category allowed a 25–foot tall office building and required a minimum lot size of 43,560 square feet.

7. Further, under the 1995 amendments, even if zoning constitutes a "permit," it is not clear that zoning is part of a "project." The amendments specify that "[p]reliminary plans and related sub-division plats, site plans, and all other development permits for land covered by such preliminary plans of subdivision plats are considered collectively to be one series of permits." Act of May 24, 1995, 74th Leg., R.S., ch. 794, § 1, 1995 Tex.Sess.Law.Serv. 4147, 4147 (West). Zoning, which appellants claim is simply another development permit, is not included in that definition. We need not and do not decide the issue in this case, but note that the second sentence of section 481.183 does not apply if zoning is not part of a "project."